FILED
2011 Jun-22  PM 01:52
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **TYRONE A. JONES,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Civil Action Number |
| ) | **2:11-cv-1046-AKK** |
| **JEFFERSON COUNTY** ) | |
| **COMMITTEE FOR** ) | |
| **ECONOMIC OPPORTUNITY,** ) | |
| **REV. T.L. LEWIS, GAYLE** ) | |
| **CUNNINGHAM, THEODORE** ) | |
| **DEBRO, JR., GERALDINE** ) | |
| **COLLINS, individually,** ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

Before the court is Defendants' Motion to Dismiss, doc. 5, and Objection and Motion to Strike Portions of Plaintiff's Motion and Brief in Opposition to Defendants' Motion to Dismiss, doc. 13.  The motions are fully briefed, docs. 10, 12, 14, and 15, and ripe for resolution.

### I.  PROCEDURAL BACKGROUND

On March 23, 2011, Tyrone A. Jones ("Plaintiff") filed a Complaint alleging that Defendants discriminated against him in violation of 1) Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq*. ("Title VII"); 2) the

Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.*; 3) § 504 of the Rehabilitation Act of 1972, 29 U.S.C. §§ 701 *et seq.* ("Rehab Act"); and 4) the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq.* ("ADEA"). Plaintiff alleges also state law claims for 1) violation of the Alabama Age Discrimination Employment Act ("AADEA"); 2) intentional infliction of emotional distress; 3) negligent hiring, training, and supervision; and 4) willful and malicious violation of Jefferson County Committee for Economic Opportunity ("JCCEO") Personnel Policies and Procedures Manual ("Manual"). Doc. 1 at 2.  Defendants moved to dismiss Plaintiff's entire Complaint on April 14, 2011.  Doc. 6.

## II.  MOTION TO DISMISS STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits dismissal when a complaint fails to state a claim upon which relief can be granted.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citations and internal quotation marks omitted).  A complaint states a facially plausible claim for relief "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted).  The

complaint must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id. See also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level."). Ultimately, this inquiry is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S. Ct. at 1950.

On a motion to dismiss under Rule 12(b)(6), the court accepts all factual allegations as true. *See, e.g., Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000). However, legal conclusions unsupported by factual allegations are not entitled to that assumption of truth. *Iqbal*, 129 S. Ct. at 1950.

### III.  FACTUAL BACKGROUND[1]

JCCEO hired Plaintiff in 1987, and eventually "assigned [him] to the JCCEO Energy Assistance Services-Midfield Energy Office as an Intake Worker." Doc. 1 at ¶¶ 11 and 13.  He remained in this position at all times relevant to this matter. *Id*. at ¶ 13.

The dispute here centers on events in 2009.  Specifically, in January 2009, Plaintiff informed his supervisors of his Type II diabetes diagnosis, and asked for flexibility during breaks and for permission to keep his insulin in the office

---

[1] The facts outlined here are the allegations in Plaintiff's Complaint.  Doc. 1 ¶¶ 11-29.

refrigerator. *Id*. at ¶¶ 15-16. Two months later, in March 2009, Plaintiff received a performance evaluation that noted, in part, "Employee has health issue that could effect [sic] attendance and performance." *Id*. at ¶ 18. That same month, Plaintiff was hospitalized from March 31, 2009, until April 5, 2009. *Id*. at ¶ 19.

After Plaintiff returned to work around April 9, 2009, a client called him a "flamboyant faggot" and allegedly, Defendant Ted Debro ("Debro"), JCCEO's Director of Community Service, discussed the incident openly in front of other staff members. *Id*. at ¶¶ 8 and 20. Then, on April 27, 2009, "Plaintiff arrived at work to find his office moved and his job duties assigned to a white female under the age of 40 years." *Id*. at ¶ 21. Plaintiff filed an internal grievance regarding his reassignment, and, in early May 2009, Debro confronted him about the grievance. *Id.* at 22 and 23. Subsequently, on May 7, 2009, Debro suspended him for "allegedly receiving, processing and approving a LIHEAP case without proper documentation, procedures and/or authorization." *Id*. at ¶ 24. On June 15, 2009, Debro recommended Plaintiff's termination because of his recent work history and for eating and keeping insulin paraphernalia on his desk. *Id*. at 25.

On July 1, 2009, Plaintiff received a letter from Defendant and JCCEO Executive Director, Gayle Cunningham ("Cunningham"), terminating his employment "for falsification of records." *Id.* at ¶ 26. Plaintiff appealed his

termination, *id*. at ¶ 28, which JCCEO denied on August 27, 2009, doc. 10-1 at 3, and subsequently filed an Equal Employment Opportunity Commission ("EEOC") charge of discrimination on February 3, 2010, doc. 1-1 at 2.

### III.  ANALYSIS

*A.  Defendants' motion to strike*

In his response to the motion to dismiss, Plaintiff attached the May 7, 2009, suspension letter , doc. 10-2, the July 1, 2009, termination letter, doc. 10-3, and a portion of the JCCEO Manual, doc. 10-4.  Defendants move to strike these documents and the corresponding sections of Plaintiff's brief because they "alleged new factual assertions that are not reflected in Plaintiff's own Complaint" and include impermissible "extraneous 'evidentiary materials.'"  Doc. 13 at 3.

"[A] document need not be physically attached to a pleading to be incorporated by reference into it; if the document's contents are alleged in a complaint and no party questions those contents, we may consider such a document provided it meets the centrality requirement." *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) (citations omitted).  A document is central to the plaintiff's claims if it is a "necessary part of [Plaintiff's] effort to make out a

claim." *Id.*[2]

Here, the Complaint incorporates the documents in question. Specifically, it states, in pertinent part, that Plaintiff received the suspension and termination letters, doc. 1 at ¶¶ 24 and 26, that Defendants engaged in "willful and malicious violation of JCCEO Personnel Policies and Procedures Manual," *id.* at ¶ 1, and that Plaintiff was unable to comply with the grievance procedures outlined in the Manual, *id*. at ¶¶ 27 and 29. In light of these allegations, the documents here are necessary, supportive, and central to Plaintiff's claims. Significantly, Defendants do not question their authenticity. *See Horsley*, 304 F.3d at 1134. Therefore, the motion to strike is **DENIED**.

B.   *Defendants' motion to dismiss Plaintiff's federal law claims*

Turning now to the motion to dismiss, in a nutshell, Defendants contend that Plaintiff's federal claims are untimely because he failed to file an EEOC charge within 180 days of his discharge and that the state law claims are not pled with sufficient facts and law. Because the court agrees with Defendants that the federal claims are untimely, it need not reach the state law arguments since it is

---

[2]A court can consider material attached to a motion to dismiss without converting it to a motion for summary judgment if the attached document is (1) central to the plaintiff's claim, and (2) undisputed. *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002) (citation omitted). "Undisputed" means the document's authenticity is not challenged. *Id*. (citations omitted).

declining to exercise supplemental jurisdiction over the remaining state claims. 28 U.S.C. § 1367(c)(3).

    1.    <u>Plaintiff's federal claims (and AADEA claim) are untimely</u>.

Defendants assert that Plaintiff's Title VII, ADA, ADEA, and Rehab Act claims are time barred because he failed to file an EEOC charge within 180 days of his July 1, 2009, termination notice. Doc. 6 at 4. Plaintiff acknowledges that he filed his EEOC charge more than 180 days after July 1, 2009. To get around this, he contends instead that he only considered his termination "final" when he "received the Board's written refusal to hear his appeal" on August 27, 2009, and that he timely filed his charge within 180 days of this date. Doc. 10-1 at 3-5, 9.[3] In other words, Plaintiff asserts essentially that the period to file an EEOC charge begins to run only after an employee exhausts internal grievance remedies. Unfortunately for Plaintiff, the case law disagrees.

To have a valid claim for discrimination under Title VII, ADA, ADEA, and Rehab Act, a plaintiff is required to first exhaust administrative remedies by filing a charge with the EEOC "within 180 days after the alleged unlawful practice occurred." 42 U.S.C. § 2000e-5(e)(1); *see also* 42 U.S.C. § 12117(a) (applying

---

[3] It appears that Plaintiff argues also that he was discriminated against when Defendants denied his right to receive a due process hearing. Doc. 10-1 at 5.

remedies and procedures of Title VII to ADA); 29 U.S.C. § 626(d); 29 U.S.C. § 794(d) (applying standards under Title I of ADA to Rehab Act); *see also Zankel v. Temple Univ.*, 245 Fed. Appx. 196, 199 n.3 (3d Cir. 2007) ("Like an ADA employment discrimination claimant, a § 504 claimant must also exhaust all administrative remedies in accordance with Title VII.") (citation omitted). Significantly, it is settled law that "[t]he pendency of a grievance, or some other method of collateral review of an employment decision, does not toll the running of the limitations periods." *Del. State Coll. v. Ricks*, 449 U.S. 250, 261 (1980) (citation omitted); *see also Int'l Union of Elec., Radio & Mach. Workers, Local 790 v. Robbins & Myers, Inc.*, 429 U.S. 229, 236 (1976). Rather, "[t]he 180-day filing period begins to run from '[a] final decision to terminate the employee.' And a 'final decision' to terminate, 'rather than actual termination, constitutes the 'alleged unlawful practice' that triggers the filing period. <u>Thus, the 180-day period is counted from the date the employee receives notice of termination</u>." *Wright v. AmSouth Bancorporation*, 320 F.3d 1198, 1201 (11th Cir. 2003) (citations omitted) (emphasis added).

Here, by his own contention, Plaintiff received notice of his termination on July 1, 2009: "Without question or an opportunity to be heard, Plaintiff received a letter dated July 1, 2009 that was signed by Gayle Cunningham terminating his

employment with JCCEO for falsification of records, including client's records."[4] Doc. 1 at ¶ 26. Therefore, the 180-day filing period began to run on July 1, 2009. *See Ricks*, 449 U.S. at 261; *Wright*, 320 F.3d at 1201. As such, to have a timely claim, Plaintiff should have filed his EEOC charge by December 28, 2009. Instead, Plaintiff waited until February 3, 2010. Doc. 1-1 at 2. While Plaintiff contends that he delayed filing his EEOC charge because "from July 7, 2009 to about August 11, 2009, [he] made numerous telephone calls and several unsuccessful attempts . . . to follow [JCCEO's] administrative procedures," that JCCEO refused to identify the Personnel Committee members, and that he finally appealed his discharge on August 11, 2009, doc. 1 at ¶¶ 27-28, the case law is settled, however, that his pursuit of the JCCEO's grievance process did not toll the EEOC filing period. *See Ricks*, 449 U.S. at 261. Indeed, Plaintiff offers no contrary authority to support his contention that a termination is only "final" for EEOC charge filing purposes after an employer rejects an internal appeal or grievance.

Plaintiff attempts also to overcome this settled law by contending that he considered his discharge discriminatory only <u>after</u> Defendants rejected his

---

[4] So that Plaintiff does not contend that his lawyer erred by making this assertion in his Complaint, the court notes also that Plaintiff made the same representation in his EEOC charge. Doc. 1-1 at 2.

grievance, and that, consequently, the 180 day period should run from this date rather than his actual discharge date. *See* doc. 10-1 at 5. However, the discharge, rather than the rejection of his grievance, is the action Plaintiff challenged in his EEOC charge and in the federal claims he filed in this court. Doc. 1 at ¶¶ 33-34, 40-41, 46-47, 50; doc. 1-1 at 2. Because it is undisputed that Defendants discharged him on July 1, 2009, doc. 1 at ¶ 26, Plaintiff's attempt to move the effective date of his termination to a more favorable later date misses the mark because his contention is not the law and is belied by the allegation in his Complaint that Defendants discriminated against him when they "reassigned [his duties] to a white female under the age of 40 years" on April 27, 2009, doc. 1 at ¶ 21. In other words, Plaintiff's own Complaint undermines his contention that he only considered Defendants' actions discriminatory after they rejected his grievance in August 2009.

Where, as here, Plaintiff failed to timely file his EEOC charge by the December 28, 2009, deadline, the law is clear that he is precluded from pursing his claims that require an EEOC charge as a prerequisite. Therefore, his federal claims are time barred.[5]

---

[5] It appears Plaintiff argues also that the 180 day filing period did not begin to run when he received his termination notice in July 2009 because JCCEO "did not immediately sever its employer-employee relationship with Plaintiff" since he continued on JCCEO's health insurance

The state law AADEA claim is also time barred since it follows the ADEA and requires a timely filed EEOC charge. *See Jones v. Dillard's, Inc.*, 368 F.3d 1278, 1279 (11th Cir. 2004).

2. Plaintiff's federal claims (and AADEA claim) are not entitled to equitable tolling of the EEOC filing requirement.

Perhaps recognizing that the case law is unequivocal that pursuit of an internal grievance does not suspend the 180 day EEOC filing requirement, Plaintiff argues alternatively that the court should equitably toll the filing period because JCCEO purportedly misled him by requiring him to "exhaust the administrative procedures outlined in the Personnel Manual prior to the filing of an EEOC Charge," and Defendants fraudulently concealed information and should be "estopped from denying Plaintiff's claims when the emplyee [sic] strictly complied with the Agency's instructions." Doc. 10-1 at 6-9. In other words,

---

and received his final paycheck in August 2009. This argument is unpersuasive and was rejected by the Supreme Court. *See Ricks*, 449 U.S. at 259 (continued employment after notice of termination does not toll the filing requirement).

The claims against the individual Defendants under Title VII, ADA, ADEA, AADEA, and Rehab Act, if any, are also due to be dismissed since there is no individual liability under these statutes. *See Dearth v. Collins*, 441 F.3d 931, 933 (11th Cir. 2006) (no individual liability exists under Title VII); *Mason v. Stallings*, 82 F.3d 1007, 1009 (11th Cir. 1996) (no individual liability exists under the ADA); *Smith v. Lomax*, 45 F.3d 402, 403 n.4 (11th Cir. 1995) (no individual liability exists under ADEA); *Whitson v. City of Hoover*, 14 So. 3d 98, 103 (Ala. 2009) ("The [AADEA] incorporates the remedies available for age discrimination under the federal [ADEA]); *Pritchard v. So. Co. Servs.*,102 F.3d 1118, 1119 n.7 (11th Cir. 1996) (no individual liability exists under Rehab Act), *cert. denied*, 520 U.S. 1274 (1997).

Plaintiff contends that Defendants' actions essentially tolled the 180 day period while he pursued internal remedies. To support his contention, Plaintiff relies on the following section of the Manual:

> A Civil Rights complaint is an effort to contest any situation in which an employee feels he or she has been discriminated against on the basis of race, color, sex, age, national origin, religion, or disabling condition. A Civil Rights complaint may be filed with the EEOC <u>or</u> the employee may file suit in Federal Court once [JCCEO] channels for redress are exhausted.

Doc. 10-4 at 8 (emphasis added).

Courts may equitably toll filing deadlines if a plaintiff "justif[ies] [his] untimely filing by showing *extraordinary circumstances*." *Jackson v. Astrue*, 506 F.3d 1349, 1353 (11th Cir. 2007) (emphasis added). Extraordinary circumstances typically involve fraud, misinformation, or deliberate concealment by the defendant. *Id.*; *see also Baldwin Cnty. Welcome Ctr. v. Brown,* 466 U.S. 147, 151 (1984) (equitable tolling allowed for inadequate notice, when court misleads the plaintiff or "where affirmative misconduct on the part of a defendant lulled the plaintiff into inaction"). Significantly, equitable tolling is "reserved for extraordinary facts" and "is to be applied sparingly." *Jackson*, 506 F.3d at 1353-54 (citations omitted); *see also Manning v. Carlin*, 786 F.2d 1108, 1109 (11th Cir. 1986) (equitable tolling not allowed when plaintiff alleged intimidation by threat

of criminal prosecution); *Chappell v. Emco Mach. Works Co.*, 601 F.2d 1295 (5th Cir. 1979) (equitable tolling allowed when: (1) defendant intentionally conceals facts supporting a cause of action under Title VII or (2) where the plaintiff is misled about the nature of his Title VII rights). Further, "the filing requirement should be equitably tolled 'until the facts which would support a charge of discrimination are apparent or should be apparent to a person with a reasonably prudent regard for his rights.'" *Smith v. McClammy*, 740 F.2d 925, 927 (11th Cir. 1984) (citing *Sturniolo v. Sheaffer, Eaton, Inc.*, 15 F.3d 1023, 1025 (11th Cir. 1994) (finding that the time did not began to run until plaintiff learned that she was replaced by a younger employee).

The court turns now to Plaintiff's contention that the Manual intentionally misled him by purportedly requiring that he first file an internal grievance. A review of the Manual shows that it does contain a grievance clause as Plaintiff contends. However, contrary to Plaintiff's contention, the Manual does not require employees to exhaust internal grievance procedures or submit to any other prerequisites before filing an EEOC charge. Rather, Plaintiff is obfuscating the Manual's language to reach his desired result.

Again, the Manual states: "A Civil Rights complaint maybe filed with the EEOC <u>or</u> the employee may file suit in Federal Court once [JCCEO] channels for

redress are exhausted." Doc. 10-4 at 8 (emphasis added). Plaintiff contends that this language directs him to first exhaust internal remedies before filing an EEOC charge. Doc. 10-1 at 8. However, the law is settled that the use of the disjunctive "or" "indicates alternatives and requires that those alternatives be treated separately." *Quidlen v. Prudential Ins. Co. of Am.*, 482 F.2d 876, 878 (5th Cir. 1973); *Rine v. Imagitas, Inc.*, 590 F.3d 1215, 1224 (11th Cir. 2009) (citations omitted). As such, the language in the clause following "or" is "considered inapplicable to the subject matter of the preceding clause." *Quidlen*, 482 F.2d at 878. Stated differently, the "or" in the Manual's language strategically separates the instructive on filing an EEOC charge from that for filing a complaint in federal court. Indeed, the internal remedies prerequisite applies only to filing a law suit and, as such, is "inapplicable" to the EEOC charge procedure that is at issue here. In other words, that the language in question says "or . . . may file suit . . . once [JCCEO] channels for redress are exhausted" does not, as Plaintiff contends, mislead him into concluding that he must pursue internal remedies first as a prerequisite to filing an EEOC charge.

Further, a cursory review of the Manual reveals that it separates EEOC claims from general matters for which the Manual informs employees that they have a right to file an internal "grievance, appeal, or complaint when dissatisfied

with a disciplinary action or other treatment." Doc. 10-4 at 3. However, in those instances when the employee believes <u>discrimination</u>[6], rather than general mistreatment, is at play, the Manual informs the employee in a separate section titled "Civil Rights Complaints" that "[a] Civil Rights complaint may be filed with the EEOC," i.e., without the need to pursue an internal grievance. Doc. 10-4 at 8. This separate section carved out for EEOC claims suggests that, contrary to Plaintiff's contention, the Manual actually directs employees to file discrimination claims with the EEOC, rather than internally.

Relevant here, although the Manual does not inform employees of every available option of redress, nor is an employer required to do so, the language Plaintiff cites does not induce employees to miss the EEOC filing deadline and to abrogate their rights. Moreover, the court notes that even with his decision to pursue internal remedies first, Plaintiff still had at least four months to timely file his charge after Defendants rejected his grievance. In other words, this is not a case where Defendants purposely delayed a resolution on Plaintiff's grievance for

---

[6] Obviously, if Plaintiff is correct that he only concluded that Defendants discriminated against him when they denied his grievance in August 2009, this would undermine his contention that the Manual is misleading since the section he relies on comes into play only <u>if</u> he believes Defendants have discriminated against him. In other words, since Plaintiff is contending that he only concluded that Defendants discriminated against him <u>after</u> they denied his grievance, he cannot establish that he delayed filing his EEOC charge of discrimination in order to first exhaust internal remedies. Rather, he filed his EEOC charge late because of his belief that the 180 day period is triggered only when he considered his discharge "final" or "discriminatory."

180 days so that they can then argue that the claims are untimely.  Likewise, Plaintiff does not allege that Defendants told him directly that he had to pursue an internal grievance first before filing an EEOC charge or represented to him that the 180 day clock would not run while he pursued his internal grievance.[7]  Plaintiff's failure to timely file his charge during the four month period after Defendants rejected his grievance shows that he failed to act reasonably and with diligence and, accordingly, equitable tolling is unwarranted.  *See, e.g.*, *Baldwin Cnty. Welcome Ctr.*, 466 U.S. at 151 ("One who fails to act diligently cannot invoke equitable principles to excuse that lack of diligence.").

In short, Plaintiff alleges no action that indicates that Defendants purposely misled him or engaged in fraudulent conduct, except for his contention that the Manual is misleading.  The court, however, disagrees because the Manual does not require exhaustion of internal grievance procedures before filing an EEOC charge and specifically carves out a section for Civil Rights Complaints that is separate and distinct from general complaints which employees may grieve internally.  Indeed, in contrast to general complaints, the Manual is clear that in "any situation

---

[7] In fact, Plaintiff stated in his response that he "was directed to the Personnel Manual by both Cunningham and [ ] Debro, for answers to questions regarding his appeal rights," doc. 10-1 at 4, and that he "timed his actions in strict compliance with the directions provided in the Defendant's Personnel Manual," *id*. at 6.

in which an employee feels he or she has been <u>discriminated</u> against . . . <u>[a] Civil Rights complaints may be filed with the EEOC</u>." Doc. 10-4 at 8 (emphasis added).

The failure here to file a timely charge rests with Plaintiff because the "facts which would support a charge of discrimination . . . [were] apparent"[8] when (1) in March 2009, shortly after notifying Defendants that he had diabetes, he received a performance evaluation that stated "employee has health issue that could effect [sic] attendance and performance," (2) on April 27, 2009, when he contends his supervisor reassigned his duties to a white female under age 40 and then confronted him for challenging that action, (3) on June 15, 2009, when he contends that the same supervisor recommended his discharge, in part, for keeping insulin paraphernalia on his desk, and (4) on July 1, 2009, when Defendant discharged him. *See* doc. 1 at ¶¶ 21-23, 25-26. Although Plaintiff suspected that he would prevail at a due process hearing, doc. 10-1 at 6, which he states he never received, it does not excuse his failure to timely file an EEOC charge. *See Ricks*, 449 U.S. at 261. Because there is no evidence that Defendants misled Plaintiff or fraudulently concealed information, *see Jackson*, 506 F.3d at 1353, they are not estopped from asserting a timeliness defense.

---

[8] *Smith v. McClanny*, 740 F.2d at 927.

## IV.  CONCLUSION

Based on the foregoing, the court **GRANTS** Defendants' motion to dismiss Plaintiff's Title VII, ADA, ADEA, AADEA, and Rehab Act claims (Counts I-IV). The court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims for intentional infliction of emotional distress (Count V), negligent hiring, training, supervision, and retention (Count VI), and outrage (Count VII).  *See* 28 U.S.C. § 1367(c)(3).  Plaintiff may pursue those claims in state court.

Done the 22nd day of June, 2011.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE